**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **TONDA KUHN,** | § | |
| **Plaintiff** | § | **CIVIL ACTION NO. 4:26-cv-2606** |
| | § | |
| | § | |
| **vs.** | § | |
| | § | |
| | § | **(JURY TRIAL DEMANDED)** |
| **CITY OF PASADENA, TX** | § | |
| **Defendant** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF THIS COURT:**

COMES NOW Plaintiff Tonda Kuhn, (hereinafter, "Plaintiff" or "Mrs. Kuhn") wherein she describes the unlawful employment practices Defendant (hereinafter, "Defendant" or "City of Pasadena") subjected her to during her employment based on her FMLA requests and political affiliation. In support of her causes of action, Mrs. Kuhn respectfully shows the Court as follows:

## I. INTRODUCTION

1. This action arises from Defendant City of Pasadena's unlawful termination of Plaintiff Tonda Kuhn shortly after a change in municipal administration and immediately following Plaintiff's request for protected leave under the Family and Medical Leave Act ("FMLA"). After years of positive performance and successful leadership of the City's municipal golf course, Plaintiff was abruptly discharged within weeks of a new mayor taking office and days after initiating the FMLA certification process. Defendant's actions unlawfully penalized her for constitutionally protected political association and interfered with Plaintiff's statutory right to take protected medical leave and retaliated against her for attempting to exercise those rights. Defendant further deprived Plaintiff of

her protected property interest in continued public employment by terminating her in violation of mandatory procedures established by the City Charter, without notice or an opportunity to respond. Plaintiff seeks all legal and equitable relief available under state and/or federal law.

## II. PARTIES

2. Plaintiff. Tonda Kuhn, is an individual who resides in the City of Houston, Texas. At all times relevant to the allegations in this Original Complaint, Plaintiff was an employee of the Defendant. At all times relevant to the allegations in this Original Complaint Plaintiff's employment was protected by the Family Medical Leave Act and the First Amendment Right to Political Association.

3. Defendant City of Pasadena is a municipal corporation organized and existing under the laws of the State of Texas, with a principal place of business at 1149 Ellsworth Drive, Pasadena, Texas 77506. Defendant may be served through its Mayor, Thomas Schoenbein, pursuant to Federal Rule of Civil Procedure 4(j)(2) and Texas law.

## III. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws and Constitution of the United States, including the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., and 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments to the United States Constitution.

5. This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 USCS § 1367.

6. This Court has personal jurisdiction over City of Pasadena because it is a municipal corporation organized under the laws of Texas with its principal place of business in Pasadena, Texas.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the Southern District of Texas.

## IV. NOTICE OF FACTS

8. On February 21, 2022, Plaintiff was hired by Defendant as Parks Foreman with Special Assignment at the Golf Course.

9. In October 2022, Plaintiff was promoted to General Manager of the City of Pasadena Golf Course.

10. At the time of her termination, Plaintiff's annual salary was $90,875.20.

11. Plaintiff's 2023 and 2024 annual performance appraisals, included scores of 4s and 5s. The 2023 appraisal also included the notation that "Tonda has done a great job."

12. The 2024 appraisal stated that, "the golf course has come a long way under Tonda's leadership, much improvement and many compliments that have shown she's doing a good job." It also stated "Tonda has done a great job in working with the employees and getting things in the golf course in order. She brought a lot of knowledge and motivation to the golf course and things have definitely been moving in the right direction."

13. Plaintiff's April 2025 performance evaluation reflected scores of 3s and 4s. The April 2025 evaluation included comments that, "Tonda has done a good job getting the golf course back on track and has a great attitude."

14. During her tenure as General Manager, Plaintiff implemented new systems, upgraded equipment, and established operational protocols that improved efficiency and largely contributed to moving the golf course from operating at a loss to profitability.

15. Under Plaintiff's management, the golf course ranked No. 4 in the state of Texas for Municipal Courses for quality and budget.

16. Differently, Plaintiff was a known and active supporter of politician Rex Lindberg during the June 2025 mayoral election in the City of Pasadena.

17. Rex Lindberg lost the mayoral election on June 7, 2025.

18. Thomas Schoenbein, the opposing candidate, was inaugurated as Mayor of the City of Pasadena on July 1, 2025, instead.

19. On July 3, 2025, Plaintiff requested FMLA paperwork from Defendant for intermittent leave to care for her adult son, who is a recovering substance-abuse patient.

20. On July 8, 2025, Benefits Manager Tracy Russell provided Plaintiff with FMLA forms.

21. The FMLA forms provided to Plaintiff included a deadline of July 23, 2025, for submission of medical certification, establishing a 15-day certification period.

22. On July 16, 2025, Plaintiff was on compensatory time celebrating the birth of her grandchild.

23. On July 16, 2025, Director Jason Ross informed Plaintiff that “complaints” had been made about her.

24. The complaints referenced by Director Ross were the first such alleged complaints made during Plaintiff’s entire tenure with Defendant.

25. On July 18, 2025, Defendant terminated Plaintiff's employment.

26. Plaintiff's termination occurred only two weeks after Mayor Schoenbein took office.

27. Plaintiff's termination occurred five days before her July 23, 2025 FMLA certification deadline. Defendant did not respond to Plaintiff’s FMLA request. Defendant terminated her.

28. A memorandum dated July 18, 2025, compiled post-election grievances collected from a few staff members and one school staff member in an alleged support of Plaintiff’s termination.

29. None of the complaints referenced in the July 18, 2025 memorandum had been previously documented or brought to Plaintiff’s attention during Plaintiff's employment.

30. Defendant never issued any corrective action to Plaintiff prior to her termination.

31. Defendant terminated Plaintiff without conducting a complete investigation of the alleged complaints.

32. Defendant terminated Plaintiff without providing her prior warning of any performance deficiencies.

33. Defendant terminated Plaintiff without providing her an opportunity to respond to the alleged complaints.

34. The Pasadena City Charter establishes that suspension is the prescribed mechanism for removal of appointed, salaried officers and employees, such as Plaintiff, and that such suspension permanently terminates employment unless the employee files a petition requesting a hearing.

35. The City Charter Article III, Section 8 also required the Mayor to provide written notice of suspension to the City Council at a regular meeting held within ten working days after the effective date of suspension.

36. Mayor Schoenbein terminated Plaintiff without following the suspension procedure required by the City Charter.

37. Mayor Schoenbein did not suspend Plaintiff or provide notice of Plaintiff's termination to the City Council within the ten working days required by the City Charter.

38. Instead of suspending Plaintiff pursuant to Charter procedures, Mayor Schoenbein unilaterally discharged Plaintiff. Plaintiff timely appealed the Mayor's decision.

39. Twelve days after Plaintiff's termination, the City Council voted to ratify Mayor Schoenbein's action despite Plaintiff's notice that the Mayor was in violation of the City's Charter.

40. At the time of her termination, Plaintiff had been employed by Defendant for more than three years.

41. At the time of her termination, Plaintiff had worked more than 1,250 hours in the twelve months preceding her FMLA request and qualified for FMLA leave.

42. Defendant is a municipal employer with more than 50 employees.

## V. CAUSES OF ACTION with additional SUPPORTING FACTS

### A. <u>Violation of First Amendment Right to Political Association in Violation of 42 USCS § 1983 and USCS Const. Amend. 1</u>

43. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 42 as if fully set forth herein. At all relevant times, Defendant and its officials acted under color of state law.

44. At all relevant times, Mayor Thomas Schoenbein possessed final policymaking authority under the City of Pasadena Charter with respect to employment termination decisions concerning appointed municipal employees, including Plaintiff. His decision to terminate Plaintiff therefore constituted an official policy, practice, or decision of the City of Pasadena for purposes of municipal liability under 42 U.S.C. §1983.

45. The City of Pasadena, through its City Council, subsequently ratified the Mayor's termination decision, thereby adopting and approving the challenged conduct as official municipal policy.

46. Plaintiff was a public employee. At all relevant times, Plaintiff was employed by Defendant, a municipal corporation and governmental entity.

47. Plaintiff engaged in constitutionally protected political speech and association.

48. Plaintiff was a known and active supporter of Rex Lindberg during the June 2025 mayoral election in the City of Pasadena.

49. Political association and support for candidates for public office is protected by the First Amendment to the United States Constitution.

50. Defendant took an adverse employment action against Plaintiff.

51. On July 18, 2025, Defendant terminated Plaintiff's employment.

52. Plaintiff's protected political association was a substantial or motivating factor in Defendant's decision to terminate her employment, as evidenced by the temporal proximity between the change in administration, Plaintiff's known political support for the opposing mayoral candidate, and Plaintiff's termination.

53. Rex Lindberg lost the mayoral election on June 7, 2025.

54. Thomas Schoenbein, the opposing candidate whom Plaintiff did not support, was inaugurated as Mayor on July 1, 2025.

55. Mayor Schoenbein terminated Plaintiff on July 18, 2025, only two weeks after he took office despite years of good performance by Plaintiff.

56. The close temporal proximity between the change in administration and Plaintiff's termination supports an inference that Plaintiff's political association was a substantial or motivating factor in the termination decision.

57. Prior to the mayoral election, no complaints had been made or documented against Plaintiff during her entire tenure with Defendant.

58. The first alleged complaints against Plaintiff appeared only after the election that Plaintiff's preferred candidate lost.

59. Plaintiff had received consistently positive performance evaluations throughout her tenure, including evaluations stating that the golf course had "come a long way under Tonda's leadership" and that she had "done a good job getting the golf course back on track." Further, in a council meeting on September 2, 2024, then-Councilman Schoenbein stated, "the maintenance facilities have been done, the greens are the best in this area, the golf course is actually making money **now**, one of the success stories in our city is our golf course…." (emphasis added).

60. In fact, under Plaintiff's management, the golf course ranked No. 4 in the state of Texas for Municipal Courses.

61. Despite Plaintiff's strong performance record, Defendant terminated her within two weeks of the new administration taking office.

62. The timing of the termination, combined with the absence of prior complaints or disciplinary action, supports a reasonable inference that Plaintiff's political association was a substantial or motivating factor in her termination.

63. Upon information and belief, similarly situated employees who supported the incoming administration were not subjected to comparable disciplinary scrutiny or termination during the same period.

64. Defendant cannot demonstrate that it would have terminated Plaintiff absent her protected political conduct.

65. Given Plaintiff's strong performance record, positive evaluations, significant accomplishments, and complete absence of prior disciplinary action, Defendant cannot show it would have terminated Plaintiff but for her political association with the losing mayoral candidate.

66. Notably, before her abrupt termination and after Mayor Schoenbein was elected, Director Jason Ross said plainly to Plaintiff, “Please tell me you’re not quitting.” Then he said, “It will be for political reasons if they get rid of you.”

67. Upon information and belief, other supporters of Rex Lindberg (the losing mayoral candidate) were given the option to resign or be terminated from their employment with the City of Pasadena including Jay Dale (Former City Attorney); Rick Guerrero (Director of Economic Development), and Jimmy Pearson (Sanitation Supervisor).

68. Plaintiff suffered damages as a result of Defendant's retaliation for her protected political conduct. As a direct and proximate result of Defendant's retaliatory termination based on her political association, Plaintiff lost her employment, wages, salary, and employment benefits.

**B. <u>Violation of Procedural Due Process Rights in Violation of 42 USCS § 1983 and USCS Const. Amend. 14</u>**

69. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 68 as if fully set forth herein.

70. Plaintiff had a property interest in her continued employment.

71. As an appointed, salaried officer of Defendant, Plaintiff held the position of General Manager of the City of Pasadena Golf Course.

72. The City Charter Article III, Section 8 establishes specific procedures that must be followed for suspension and removal of appointed, salaried officers and employees.

75. The City Charter requires that the Mayor provide written notice of suspension to the City Council at a regular meeting held within ten working days after the effective date of suspension.

76. Absent compliance with these Charter procedures, Defendant lacked discretion to terminate Plaintiff's employment

77. The City Charter provides that suspension permanently terminates employment unless the employee files a petition requesting a hearing in the time and manner provided in the Charter.

78. These Charter provisions limited Defendant's discretion to terminate Plaintiff's employment and required compliance with specified suspension procedures prior to removal, thereby creating a legitimate claim of entitlement to continued employment and a constitutionally protected property interest.

79. Defendant deprived Plaintiff of her property interest in continued employment.

80. On July 18, 2025, Defendant terminated Plaintiff's employment.

81. Defendant deprived Plaintiff of her property interest without adequate procedural protections.

82. Defendant failed to follow the suspension procedures required by City Charter Article III, Section 8.

83. Mayor Schoenbein did not suspend Plaintiff pursuant to the Charter procedures, but instead unilaterally discharged her.

84. Mayor Schoenbein did not provide notice of Plaintiff's termination to the City Council within the ten working days required by the City Charter despite the provisions of the Charter stating that:

> any willful violation of the provisions of the Charter or the Laws of the State of Texas relating to Home Rule Cities shall constitute malfeasance in office, and any officer or employee of the City guilty thereof shall immediately forfeit his office or position, and said office or position shall be deemed vacant.

85. Defendant terminated Plaintiff without providing her with prior notice of the alleged performance deficiencies or complaints against her.

86. Defendant terminated Plaintiff without providing her an opportunity to respond to the alleged complaints before the termination decision was made.

87. Defendant terminated Plaintiff without conducting a pre-termination hearing at which she could present her side of the story.

88. Defendant terminated Plaintiff without conducting a complete investigation of the alleged complaints.

89. Twelve days after Plaintiff's termination, the City Council voted to ratify Mayor Schoenbein's action, but this post-hoc ratification cannot cure the procedural defects that occurred prior to and at the time of termination.

90. The process provided to Plaintiff was constitutionally inadequate under the circumstances.

91. As a public employee with a property interest in continued employment, Plaintiff was entitled to notice of the charges against her and an opportunity to respond before being deprived of her employment.

92. Defendant's failure to provide these basic procedural protections violated Plaintiff's right to due process of law under the Fourteenth Amendment.

93. Plaintiff suffered damages as a result of the due process violation.

94. As a direct and proximate result of Defendant's deprivation of her property interest without due process, Plaintiff lost her employment, wages, 240 hours of unused comp time, and employment benefits.

95. Plaintiff has suffered and continues to suffer lost wages and benefits from the date of her termination to the present.

96. Plaintiff has suffered emotional distress and damage to her professional reputation as a result of being terminated without due process.

### C. <u>Interference with FMLA Rights in Violation of 29 USCS § 2615</u>

97. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 96 as if fully set forth herein.

98. Plaintiff was an eligible employee under the FMLA.

99. Plaintiff had been employed by Defendant for more than three years at the time of her termination, satisfying the twelve-month employment requirement.

100. Plaintiff had worked more than 1,250 hours in the twelve months preceding her FMLA request.

101. Defendant was a covered employer under the FMLA.

102. Defendant is a municipal employer with more than 50 employees within 75 miles of Plaintiff's worksite.

103. Plaintiff was entitled to FMLA leave.

104. Plaintiff sought intermittent FMLA leave to care for her adult son with a serious health condition, specifically substance abuse recovery, which qualifies as a serious health condition under the FMLA.

105. Plaintiff provided proper notice of her need for FMLA leave.

106. On July 3, 2025, Plaintiff requested FMLA paperwork from Defendant.

107. Defendant acknowledged Plaintiff's request by providing FMLA forms on July 8, 2025, through Benefits Manager Tracy Russell.

108. Defendant interfered with Plaintiff's exercise of rights protected under the FMLA.

109. Defendant terminated Plaintiff's employment on July 18, 2025, during the mandatory fifteen-day medical certification period provided under the FMLA regulations.

110. By terminating Plaintiff before expiration of the certification period, Defendant deprived Plaintiff of the statutory opportunity to complete the certification process and exercise her right to take protected FMLA leave.

111. Plaintiff suffered damages as a result of Defendant's interference.

112. As a direct and proximate result of Defendant's interference with her FMLA rights, Plaintiff lost her employment, wages, salary, employment benefits, pension and 240 unused comp hours.

113. Plaintiff has suffered and continues to suffer lost wages and benefits from the date of her termination to the present.

**D. Retaliation for FMLA Leave Request in Violation of 29 USCS § 2615**

114. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 113 as if fully set forth herein.

115. Plaintiff engaged in protected activity under the FMLA.

116. On July 3, 2025, Plaintiff requested FMLA leave, which is activity protected by the FMLA.

117. Defendant had knowledge of Plaintiff's protected activity.

118. Defendant, through Benefits Manager Tracy Russell, provided Plaintiff with FMLA forms on July 8, 2025, demonstrating actual knowledge of Plaintiff's FMLA request.

119. Plaintiff suffered an adverse employment action.

120. Prior to requesting FMLA leave, Plaintiff had received consistently positive performance evaluations and no complaints had been documented against her during her entire tenure.

121. The first documented complaints against Plaintiff appeared only after she requested FMLA leave.

122. Defendant never issued any corrective action to Plaintiff prior to her termination, despite allegedly having performance concerns.

123. The abrupt nature of Plaintiff's termination, without prior warning or opportunity to respond, further supports an inference of retaliation for her FMLA request.

124. Plaintiff suffered damages as a result of Defendant's retaliation.

## VII.
## JURY DEMAND

125. Plaintiff demands a trial by jury on all issues so triable.

## VIII.
## PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

A. Back pay against Defendant from July 18, 2025, to the present, including all wages, salary, and employment benefits that Plaintiff would have earned but for Defendant's unlawful conduct, with prejudgment interest, pursuant to 29 USCS § 2617.

B. Front pay against Defendant for a reasonable period into the future, or in the alternative, reinstatement to Plaintiff's former position as General Manager of the City of Pasadena Golf Course or to a substantially equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment, pursuant to 29 USCS § 2614.

C. Liquidated damages against Defendant in an amount equal to the back pay and front pay awarded, pursuant to 29 USCS § 2617.

D. Compensatory damages available under applicable federal law including 42 U.S.C. §1983.

E. Reasonable attorney's fees and costs of litigation pursuant to 29 USCS § 2617 and 42 USCS § 1988.

F. Prejudgment and post-judgment interest as allowed by law.

G. A declaratory judgment that Defendant's termination of Plaintiff violated the Family and Medical Leave Act, 29 USCS § 2615, the First Amendment to the United States Constitution, USCS Const. Amend. 1, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

H. A declaratory judgment that Defendant's termination of Plaintiff violated the procedural requirements of the City of Pasadena Charter Article III, Section 8, Pasadena, Texas Code of Ordinances Section 8.

I. Such other and further relief as the Court deems just and proper.

J. Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

K. such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Complaint or by any amendment hereto.

Respectfully submitted,

/s/ *Marjorie A. Murphy*
Marjorie A. Murphy
Texas State Bar No. 24013218
**The Murphy Law Practice, PLLC**
24 Greenway Plaza, Ste. 1800
Houston, Texas 77046
Telephone: (832) 564-3804
Facsimile: (832)-553-7441
Email: marjorie@themurphylawpractice.com
**ATTORNEY FOR PLAINTIFF,**
**TONDA KUHN**